We are here in a bankruptcy adversary proceeding and the issue is whether the judgment that Ms. Quinn obtained in the state court for sexual harassment against her employer is dischargeable or is non-dischargeable under Section 523A6. Section 523A6 has a two-pronged test. One looks to the act itself, the other to the state of mind of the actor. And it is our position that the evidence before the bankruptcy court establishes both prongs have been satisfied here. What's the state of mind prong that you have to establish? What do you have to show? The state of mind prong is known as the willfulness prong. And what does that mean? According to this court, that means a subjective intent to cause harm or a knowledge that the harm is substantially certain to result. And how does the state court determination answer that as far as you're concerned? The judgment itself does not. Right. But the facts that are presented in the moving papers does. How? The facts show that the conduct of the debtor consisted of a consistent source of sexual harassment of an unconsenting victim. Yeah, but that's the facts. Don't you have to go to the determinations? What part of the determination is conclusive on this issue of willfulness of intent to injure? The determination by the state court? Yeah. I don't believe we – two responses. First, we do not need to rely on the state court determination. We can separately establish before the bankruptcy court that the facts that underlie the judgment. Yeah, but that's not what happened. The bankruptcy court took it as a matter of what, collateral estoppel? I agree, Your Honor, and that was an error. It was. It was an error. It was argumentative. It was an error in the argument presented by the two sides. But the bankruptcy court's decision was correct. I think that – Okay. Let me jump over. You want us to send it back to the bankruptcy court and say do it on the facts. Is that what you're asking? I don't think we need to send it back to the bankruptcy court because the motion is considered de novo by this court. So this court can look independently at the record. It does not need to consider the rationale used by either the bankruptcy court or the district court in looking at the same record. So we have before us the record, which consists of the judgment, as well as a sworn declaration, as well as a verified complaint. And it elaborates on the fact. Part of the place where this gets off the track is the definition in the jury instruction of malice because there's a possibility that it's intentional, an intent to cause an injury, but it's also a possibility of despicable conduct with conscious disregard and oppression and all that kind of stuff, which doesn't involve an intent to injure. So doesn't that have to be sorted out? I mean, so was this guy just a real flaming idiot or did he intend to injure her? Can we determine that conclusively in appellate court at this level when it's not been done by the appropriate trial court? The appellate court, in the context of the motion for summary judgment, can make the same determination the trial court does. It's de novo. I mean, there's no genuine issue of material fact that needs to be battled out in a trial. Not in this record. There's no controverted testimony by Mr. Berry. Where does he say I intended to injure her? Well, this Court has acknowledged that we don't need to show an admission by the debtor to prove the subjective state of mind. We can do it by inferences from circumstantial evidence, and that's, in fact, probably the only way to do it. It's going to be a very rare case that you're going to find a debtor who admits that he intended to kill her. Okay. What is the uncontroverted evidence that shows the subjective intent? That establishes, not just establishes, it has to be something uncontroverted evidence that establishes the subjective intent. Is that here? What's that piece of evidence that's uncontroverted? The evidence consists of her Ms. Quinn's sworn affidavit that was submitted as part of the moving papers, her verified state court complaint. Yeah, but what does that say? It says that during the course of several years, on many repeated occasions, my employer, who was not only my supervisor, but he was the chairman of the company and the owner of the company, would place pornographic. We understand that, but did she say he intended to injure me? Well, the evidence shows that he targeted her. This was not a circumstance where he had pornographic material on his desk, and she would come in and see it inadvertently. This is not a case where exposure to pornographic material was inadvertent. Her testimony establishes, and it's not contradicted by his testimony, that she was directed to pull those files that had the pornography in them. There's no doubt about that, but where's the intent to injure? The intent to injure is inherent in the fact that he would place pornographic. That's the problem. It's inherent. The injury is inherent in what goes on, but the intent, that's the problem. There can be no other intent but to cause her shock. Where does it say that? There can be no other intent. We are entitled to have... We know this guy's not just a slob who thinks it's going to excite this woman and lure her into his arms. Well, that's... And there are a lot of those people around. We know that. Yes, and that's why the California case law that deals with the same issue in the context of Insurance Code 533 is helpful for us on this because they've addressed this in a number of cases, and they say, we're not going to let a harasser or a molester say, I was just trying to get... And they didn't, but this is a question of dischargeability in a bankruptcy court with a willful requirement. That's the trick. California law doesn't tell us anything about that. Well, Section 533 of the Insurance Code has the exact same requirement. It's subjective, just as 523A6 is. The Shell Oil Court is definitive on that. It says it's not an objective test. It's subjective. And, indeed, the formulation of the test under Insurance Code 533 is identical. Subjective in terms of intent? Yes. Yes. The Shell Oil case says it's... They wrestled with the question, which this Court did in the Sue case, is it objective or subjective? And the Shell Oil case came down squarely and said it is subjective. The insurer, in order to avail itself of 533, must prove that the insured subjectively intended to cause damage or knew to a substantial certainty the damage would result. It's the exact same test we have under 523A6. Are you abandoning entirely the collateral estoppel argument? I am. I don't think that the State court decision would have been collaterally a stop... would have collaterally stopped either party on this issue because it was not necessary to the decision. Okay. Even so, your view is despicable conduct, which is carried on by the defendant with a willful and conscious disregard of others, is not subjective intent to harm? Well, I... As Judge Collins pointed out, it's not clear what the jury was relying on in awarding punitive damages. But as many courts in the country have found, the award of punitive damage is certainly a high indicator that 523A6 has been satisfied. But I don't think in this case we need to rely exclusively on the award of punitive damages. Did you argue collateral estoppel to Judge Collins? No. In fact, we pointed out to Judge Collins that she should look beyond the State court judgment and examine the entire record. And I think that's where she erred, that she relied exclusively on the collateral estoppel argument. And I'm not saying... I'm not trying to use this as a gotcha to Mr. Berry. Because even if Ms. Quinn had won on the intentional infliction of emotional distress cause of action in the State court action, I don't think that would collaterally stop Berry from relitigating the issue here either. Because, again, that cause of action was not necessarily decided as part of the State court judgment. For example, if Berry had believed that there had been an erroneous jury instruction on that cause of action, but that there was no error in the State court proceeding on either the sexual harassment count or the negligent infliction count or the punitive damage claim, then he would have had no basis for appeal or to have brought post-trial motions on that. Because reversal on that count wouldn't have changed the outcome of the case. And that's why collateral estoppel doesn't apply to either party. The jury decision on that intentional infliction of emotional distress count would not have collaterally stopped Berry, and his favorable verdict does not collaterally stop Ms. Quinn from proving in this proceeding that his conduct met both the willful and the malicious prongs of 523A6. And so I think the rationale used by the bankruptcy court was in error, but he had a gut reaction to the facts, which was right on. The district court judge erred by focusing narrowly on the collateral estoppel issue and getting that incorrect. But when this court examines the facts independently and the facts are undisputed, there is no declaration by Mr. Berry saying, my sole purpose was in making myself happy. The only inference, the only reasonable inference that can be drawn from the fact that he did this over many, many occasions, that it escalated, and that he drew her specific attention to these facts. The only inference is that he intended to expose her to this on a repeated basis in an employment context where he had the power over her, and he knew she couldn't complain. He knew she had to endure this. And based on that uncontroverted record, the only conclusion can be that his conduct was both willful and malicious, and he's not entitled to have that discharge through bankruptcy. I'd like to reserve the balance of my time for rebuttal. Okay, thank you. Good morning, Your Honors. May it please the Court, my name is William Bird. I'm here on behalf of the appellee, William Clark Berry. The argument I've heard so far this morning is very interesting, because if we look back at the motion that was filed with the bankruptcy court for summary judgment by Ms. Quinn, it is predicated solely on collateral estoppel based on a state court judgment. And the primary thrust of the argument, in fact, the only real argument that was advanced, was that because punitive damages were awarded, the debt is not discharged under 523-A6. And the other side now concedes that's dead wrong. Well, apparently so, Your Honor. But that is the only argument that was advanced to the bankruptcy court. A declaration was filed. There is no argument in the motion regarding the contents of the declaration. The only argument is collateral estoppel. In our cross motion, we argued, yes, collateral estoppel does apply, but it mandates judgment in Barry's favor, because the only intentional tort tried by the jury, intentional infliction of emotional distress, was decided in his favor. Yeah, but the malice problem, you've got three possibilities on malice, two work for you or two work against you, one works for you. Correct, Your Honor. And that's why, to be perfectly candid, I agree with almost everything in Judge Collins' decision, reversing the bankruptcy court, with one exception, and I'm somewhat confused by it. It would seem to me that if malice, there are two possible definitions of malice, one requires an intent to injure, one does not. An element of intentional infliction of emotional distress is intent to injure. The jury found in Barry's favor on that issue. And having found in his favor on intent to injure, on intentional infliction of emotional distress, it would seem illogical that they could have then awarded punitive damages on a sexual harassment claim based on intent to injure. It's the same conduct that gave rise to both claims. Perhaps the injury isn't just emotional distress. I don't believe the record, Your Honor, reflects that as to Mr. Barry individually, not the company, that there was any other claim for damages against him other than for the emotional distress that Ms. Quinn suffered. There was a claim against the company, which is separate and apart, you know, for lost wages and that sort of thing. But as to Mr. Barry, the individual, it was for the bad things he did. Why shouldn't we send this back to the bankruptcy court and say, do it right, figure out based on the facts and circumstances whether this was willful or not? Because, Your Honor, I think that a jury has already determined that it wasn't. A jury has already determined that there was no intent by Mr. Barry to intentionally inflict emotional distress. Within the meaning of that cause of action. Yes, Your Honor. That's your problem. But as far as the sexual harassment claim is concerned, sexual harassment is a creature of statute and it is essentially a strict liability offense. There is no intent required. You can be simply a complete idiot and jerk and you're liable. The, when we look to the punitive damages aspect of it, as Judge Traub pointed out, there's only the one definition of malice and it's in the alternative that requires an intent to injure. And as I tried to say, perhaps inartfully, it seems to me logically inconsistent that the jury could find that Barry did not intend to injure Ms. Quinn by committing intentional infliction of emotional distress, but did intend to injure her by sexually harassing her when it's the same conduct that was in issue on both claims. So you're saying either the punitive damages is wrong or the intentional infliction of emotional distress is wrong? No, Your Honor. I'm saying that the jury must necessarily have awarded punitive damages under the second definition of malice, which does not require an intent to injure, or under oppression, which requires no intent at all. And that being the case, I don't know that there's anything to be tried. It has been tried before a jury. A jury has spoken. You mean oppression doesn't require any kind of intent. It means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's right. Yes. Conscious disregard is a kind of intent. It's not sufficient under 523A6 as interpreted by the Supreme Court in Geider to constitute willfulness. We had in this Court's decision in Carrillo v. Sue. Reckless disregard is not enough. I'm not sure about conscious disregard. Your Honor, I submit that speeding through a red light is a conscious disregard of the rights of other people, and that's what Mr. Sue did. And this Court found that that was not sufficient to support a claim under 523A6 and remanded the matter to the bankruptcy court for trial. So you're saying reckless disregard and conscious disregard are the same thing? I suspect that conscious disregard is a level beyond reckless disregard, but it is not an intent to injure, Your Honor. It's somewhat less than that. And that's what's required under 523A6 based on the Supreme Court's decision in Geider. I would respectfully submit that Judge Collins got it right in her decision with one little caveat, and that is I respectfully disagree that this Court cannot and should not conclude that the jury necessarily awarded the punitive damages to the sexual harassment claim based on either the second definition of malice or under oppression, neither of which are sufficient to meet the standards under Geider for dischargeability under 523A6. And I want to point out, I'm not here to defend Mr. Barry's conduct. His conduct was reprehensible, and he has been punished for it. And not yet. No, Your Honor, he has. He lost the company his father founded. It went into bankruptcy. He went into bankruptcy. He has surrendered all non-exempt assets to a court-appointed trustee. He has suffered the embarrassment and the indignity, and I'm not saying it wasn't deserved. I'm sorry. My comment was ill-advised. So he has suffered the embarrassment, the public humiliation of the trial, the loss of the business his father founded, filed bankruptcy, lost all non-exempt assets to a court-appointed trustee. The issue before this Court is, does the law require that he be further punished? And it does not, not under the standards set forth by the Supreme Court in Geider and not based on the findings of the jury that tried this case. Unless the Court has any further questions, I won't belabor my points. Okay. Further questions? No. Thank you very much for your argument. Thank you, Your Honor. Thank you, Your Honors. The issue really is not whether Mr. Berry has been punished, but whether Ms. Quinn has received compensation for the harm that he caused. And he availed himself of the bankruptcy law to protect himself from compensating her. But he's not the honest but unfortunate debtor that the bankruptcy law is aimed at protecting. The counsel for Mr. Berry has not addressed the central question with respect to collateral estoppel, and that is whether or not the issue of willfulness was necessarily determined by the state court jury. As we pointed out in our reply papers, any ruling on that issue that might be implicit in the jury's findings was not necessary to the case. And the inconsistency that appears between the verdict in favor of Ms. Quinn on punitive damages and the verdict in favor of Mr. Berry on the intentional infliction cause of action would have been raised by Ms. Quinn in post-trial motions, would have been tested by her on appeal if it had been necessarily decided. And only then would there have been a final conclusive finding on that issue. But because it was not necessarily decided, she did not have any reason to test the verdict through post-trial motions or appeal. She got what she sought through the other causes of action, and so the adverse verdict on intentional infliction cause of action was of no matter to her. It was unnecessary to the judgment, and therefore, one of the five prongs of collateral estoppel which Mr. Berry has a burden of proving has not been satisfied here. So the jury verdict is not sufficient to establish dischargeability for Mr. Berry. We concede it also is not sufficient for Ms. Quinn to establish nondischargeability. Fortunately, in the record, there is more than the jury verdict, and there is sufficient evidence in the record for this court to make its de novo independent finding that the nature of the sexual harassment here, we're not asking for a holding that every instance of sexual harassment falls within 523A6. Let's say we disagree with you on our ability to decide the case here. What are you asking us to do, if anything? Well, the only other thing would be to remand the bankruptcy court to For what purpose? To either have a new motion for summary judgment hearing or a trial. Is the other side correct when it says that your side in bankruptcy court relied on nothing more than collateral estoppel? That's not quite correct. That was the argument presented, but the evidence presented consisted of more than the state court judgment. Well, I mean, what was your legal point? That collateral estoppel rules the day. That was my predecessor's legal point. So why should we give you another chance? Why should we turn the legal system into a degenerative disease and give you an opportunity to go back and start over? You elected your approach to the case. It didn't work. Now you want to do over. Well, fortunately, the rule is that a decision is affirmed for any reason. And so even if the We also have the authority to say you had your chance. You didn't take it. So we're not going to turn this into a never-ending game with no rules. Well, this rule of appellate review is pretty well set up. And that is the court will analyze the record and will affirm for any reason, even if it's not the reason used by the The court may do that. We have the power to do that, but it's not a requirement. Well, that may be, but the reason exists for a But the reason also is that you plead your case and you get to go to court. And then you work up the system. And you just don't get to do do-overs all the time. When somebody made a mistake, as you admit, it was a mistake to rely on collateral estoppel. Now you want to start all over again. When does the money start flowing into the pockets of the lawyers on something like this? I mean, this is never-ending. No, it shouldn't be never-ending. In fact, it should end here. And it should end by an affirmative. I have a question. By the time you got to the district court, was it a two-pronged argument in support of the bankruptcy court at the district court? Or was it still just a collateral estoppel argument? No. By the time it got to Judge Collins, I was counsel of record. And I recognized that the legal premise used by my predecessor was erroneous. And I made the argument to Judge Collins that she should look at the entire record and that she could affirm based on the entire record. Okay. So in support of the affirmance in your favor or the decision in your favor at the bankruptcy court, at the district court you argued both arguments. Correct. Now, so let me get it straight. So you win summary judgment in bankruptcy court. District court reverses, in fact, enters summary judgment for the other side. I'm assuming that the reversal of the summary judgment for the other side for the purpose of this question is incorrect. So we're back solely to the question as to whether or not the reversal of the summary judgment for you was correct. Now, you argued or your predecessor attorney argued in the bankruptcy court for summary judgment based on collateral estoppel. If we disagree with that, we say no summary judgment, well, that just puts you back to where you would have been absent a grant for the motion for summary judgment. That is to say, okay, prove your facts, which is where I think you're now saying you ought to be. Well, it's not where I want to be, but it would be the second best option. Well, prove the facts, and you're trying to get us to look at the facts instead of having the bankruptcy judge look at the facts as the initial matter. Well, yes. But in the context of motions for summary judgment, appellate courts do look at the facts. Yeah, yeah. So you're still trying to save your summary judgment. And if we disagree and say, you know, we're not about to look at those facts and save your summary judgment on that ground, given that that was never argued before, we just send you back to have the district judge look at the facts? I'm assuming the bankruptcy judge. That's certainly what the Court should do if it's not inclined to independently review the record and come to its own conclusion about the summary judgment. At a minimum, it should send it back to the bankruptcy court for a new motion or for a trial. Now, what's the trial going to look like? Might the trial simply be a review of the transcript in the State court? No, because the issue of his intent to cause her harm under 523A6 was not necessarily decided in the State court trial. So what's it going to look like? Witnesses. Unfortunately, she's going to have to revisit this. She hoped not to. And it's our belief that she doesn't have to because of her uncontradicted declaration. Did the district court enter summary judgment? No. The district court remanded to the bankruptcy court to enter summary judgment. They should have entered summary judgment, just remanded, right? So there is no summary judgment in favor of Mr. Farragut. I see. I mistook the record on that point. I suppose you could always stipulate the State court proceeding as the evidence in the bankruptcy court. Well, we could. That's not going to happen, you're telling me. I haven't thought through what that trial will look like. But if necessary, that's what we'll do. That's why I told my law clerks if they're in practice out there and they don't know a whole lot about bankruptcy law, they're getting themselves in big trouble. Here you had a sexual harassment case in State court and all of a sudden it ends up in bankruptcy court. No. My counsel for Ms. Quinn in the bankruptcy court was bankruptcy counsel. And we came back by – I bet you nobody ever thought about this in State court. Oh, that's true. But it wouldn't have mattered because you can't – There's no way to protect yourself? There would have been no basis for her to challenge the jury verdict. She was not aggrieved by it. But you very well might have settled the case rather than taking a chance of now three years of thrashing around in Federal court. Undoubtedly, there were opportunities to settle this that would have, in hindsight, looked like they would have been good deals for both sides. But that's not where we are today. Thank you, Your Honors. Thank you very much. The case of Barry v. Quinn is now submitted for decision.
judges: Trott, W. Fletcher, Restani